# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

BLOOMINGDALE DEVELOPMENT,
LLC,

      **Plaintiff,**

**v.**                                **Case No.  8:07-cv-575-T-30MAP**

HERNANDO COUNTY,

      **Defendant.**

_____/

## ORDER

THIS CAUSE comes before the Court upon Defendant Hernando County's Motion for Summary Judgment (Dkt. #26), Plaintiff's Amended Response to Defendant's Motion for Summary Judgment (Dkt. #46), Plaintiff's Motion for Partial Summary Judgment (Dkt. #25), and Defendant Hernando County's Response to Plaintiff's Motion for Partial Summary Judgment (Dkt. #35).  The Court, having considered the motions, memoranda, affidavits, depositions, exhibits, and being otherwise advised in the premises concludes that Defendant's motion for summary judgment should be granted in part and denied in part and Plaintiff's motion for partial summary judgment should be granted in part and denied in part.

### Summary Judgment Standard

Summary judgment is appropriate only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "A genuine issue of material fact does not exist unless there is

sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995). At the summary judgment stage, the judge's function is not to "weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986).

In considering a motion for summary judgment, the court views all evidence in the light most favorable to the party opposing the motion. *Harris v. H & W Contracting Co.*, 102 F.3d 516, 519 (11th Cir. 1996). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. If the movant meets this burden, the burden then shifts to the nonmoving party to establish that a genuine dispute of material fact exists. *See Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 918 (11th Cir. 1993).

## Background Facts

In 1990, Harvey Ayers, filed a petition with Hernando County to develop a 368 acre parcel into an upscale residential community surrounding an eighteen hole golf course. The requested zoning for the 368 parcel was Combined Planned Development Project ("C/PDP"). On December 4, 1990, the Trails at Rivard was rezoned from agriculture ("AG") to C/PDP for residential use (the "Rivard 1990 Master Plan"). Hernando County's land development regulations permit property zoned as C/PDP to develop up to 5.4 residential units per acre. On November 1, 1994, Hernando County approved Revisions to the Rivard 1990 Master Plan (the "1994 Revised Master Plan"). The 1994 Revised Master Plan divided the 368 acre parcel into 3 phases. Phase 1 shows plans for a golf course community with a club house.

Phase 2 (the middle phase immediately east of phase 1, consisting of approximately 64 acres) shows plans for a plotted residential home community. Phase 3 (the eastern most phase, consisting of approximately 125 acres) shows plans for future development with the same density and zoning as the other phases within the development. In 1997, the Trails at Rivard plat was approved by Hernando County for development as a golf course community.

Subsequently, Jay Pashley purchased Phase 3, the 125 acre parcel. On March 3, 2000, Mr. Pashley acquired an easement across the master planned extension of Rivard Boulevard as anticipated in the 1994 Revised Master Plan. After acquiring an easement, Jay Pashley filed a petition with Hernando County to reconfigure the 125 acre parcel into minimum parcel sizes of 5 acres, with 12 dwelling units and a twelfth interest in an access tract from Crum Road (dirt road adjacent to the eastern property line of 125 acre parcel). On September 27, 2000, Hernando County approved the reconfiguration of the 125 acre parcel as requested by Mr. Pashley and sent a letter to Mr. Pashley notifying him of its decision.

On November 14, 2000, pursuant to the request of the owner of Phases 1 and 2 of the Trails at Rivard, Hernando County vacated the public rights-of-way as shown in the 1994 Revised Master Plan, converting Rivard Boulevard and Clearview Drive to private rights-of-way. Pursuant to the 1994 Revised Master Plan, Rivard Boulevard and Clearview Drive were the only access roads leading into and out of the Trails at Rivard development from Phases 1, 2 and 3 onto a main collector road (US-41).

At the November 14, 2000 zoning hearing, Chief Assistant County Attorney William Buztrey noted that "originally there was an agreement between Rivard and the owner of the

125 acres regarding cross-easements. . . the County had a legitimate concern that the vacation and privatization should not affect access to the 125 acres."[1]  Mr. Buztrey also stated, "he did not believe that the owner of the blue property [Phase 3] had been notified [of the request for vacation] since the property was not affected by the vacation, other than the access. . .it would be appropriate to continue this issue for one month in order to contact the owner of the blue property [Phase 3] to obtain assurances that the vacation would not adversely affect the owner."[2]  Growth and Development Services Department Director Larry Jennings discussed the additional property to the east and stated that it "was part of the original Rivard zoning and Master Plan."[3]  "Crum Road provided a legal access point, but not access for development of that nature."  Prior to vacating the roads, he said a discussion must be had with the developer as to the arrangements regarding both pieces of unplatted, undeveloped property [Phase 2 and 3].[4]  Mark Marconi, on behalf of the petitioner, stated "granting the vacation provided the developer with control over what happened on the 125 acres."  Mr. Marconi asked the Board not to continue the issue and to finalize it at the November 14, 2000 zoning hearing.  On the same day, the Hernando County Board vacated the public rights-of-way without notice to Mr. Pashley.[5]

---

[1] Dkt. #37, Exhibit "C", BCC's November 14, 2000 minutes.

[2] *Id.*

[3] *See id.*

[4] *See id.*

[5] *See id.*

On April 4, 2001, Hernando County approved another revision to the Master Plan for Trails at Rivard (the "2001 Revised Master Plan"). The 2001 Revised Master Plan showed: (I) a preliminary layout of lots and streets for Phase 2 (future Costa property) and a designation as "Future Development" for Phase 3 (future Bloomingdale property); (ii) public access rights-of-ways to Phase 3 through Rivard Boulevard and Clearview Drive (although County had vacated such public access in November of 2000); and (iii) Phase 3 zoned as C/PDP permitting 5.4 residential units per acre on the 125 acre parcel. On September 10, 2002, Mr. Pashley acquired a second easement across the existing portions of Rivard Boulevard through Phase 1.

On February 16, 2005, Plaintiff Bloomingdale Development, LLC ("Plaintiff" or "Bloomingdale") purchased Phase 3 of the Trails at Rivard, the most easterly parcel consisting of approximately 125 acres designated as "Future Development" on the 2001 Revised Master Plan (hereinafter referred to as the "Bloomingdale Property"). On May 16, 2005, Bloomingdale submitted its application for approval of a revised master plan as to the Bloomingdale Property, showing proposed internal densities of 164 units, rights-of-ways widths, layout of lots and streets, conservation and retention areas and utility and drainage easements. Bloomingdale's requested density of 164 units was significantly lower then the maximum permitted density for the 125 acre parcel under the 2001 Revised Master Plan (5.4 units per acre equaling approximately 675 units).

Less than two weeks later, on May 24, 2005, Hernando County adopted a new written Subdivision Access Policy requiring "a minimum of two access points to serve any new

subdivision or development pod."[6]  The policy was not intended to be applied retroactively as to previously approved developments.[7]  On October 6, 2005, Hernando County Fire Rescue District approved the emergency access route proposed by Bloomingdale via Crum Road.

On October 12, 2005, the Hernando County Board of County Commissioners (the "Board") denied Bloomingdale's application for a revision to the 2001 Revised Master Plan, pursuant to Resolution No. 2005-280.  The Board concluded that the 2001 Revised Master Plan had expired after two years, and, therefore, was null and void.  Based on such premise, the Board determined that the two access point requirement applied to the Bloomingdale Property.  The Board also determined that Bloomingdale failed to adequately demonstrate mitigation for the anticipated impacts to the existing wetlands or the Squirrel Prairie flood plain from the proposed development.[8]  Since Bloomingdale's application only demonstrated legal access to one access point for the proposed development, its application was denied as "not consistent with the County's adopted Comprehensive Plan and the County's land development regulations."[9]

---

[6] Dkt. #50.

[7] Hernando County Chief Planner Jerry Grief acknowledges that the new written "two access points" policy was not meant to be retroactive, rather it is meant for "subdivisions that are currently" being developed.  *See* Dkt. #44, Deposition of Jerry Grief, Page 55-56.

[8] Typically, such mitigation factors are examined by the Southwest Florida Water Management District during the course of permitting and the development process, not at the master plan phase.  *See* Dkt. #28-4, Deposition of Mark Guttman.

[9] Dkt. #29-4, Resolution No. 2005-280.

On November 2, 2005, Costa Homes (developer of Phase 2, hereinafter referred to as "Costa") filed an application for approval of a revision to the 2001 Revised Master Plan for the Trails at Rivard.[10] Initially, the Hernando County Staff issued an administrative determination that Costa's application should be denied for the same reasons the Bloomingdale's application had been denied, i.e. the 2001 Revised Master Plan had expired after two years, and therefore, was null and void. Thus, the "two point access" policy applied to the Costa subdivision. Since Costa's application demonstrated legal access to only one access point for the proposed development, it's application was initially deemed "not consistent with the County's adopted Comprehensive Plan and the County's land development regulations."

Costa appealed the administrative decision arguing that the 2001 Revised Master Plan had not expired under the "substantial construction exception" contained in Article VIII.[11] Article VIII states, in pertinent part:

---

[10] Notably, in November of 2005, Phase 2 of the Trails at Rivard was owned by a local business entity named John Law Ayers, Inc. John Law Ayers, Inc., through its authorized representative, consented and authorized Costa Homes, Inc. and Nicholson Engineering, Inc. to submit an application to Hernando County for a master plan revision and conditional plat. Of further interest, Nicholas Nicholson, owner of Nicholson Engineering, Inc., was a board member of the Hernando County Planning and Zoning Commission for seven years from approximately 1999 through late 2005/early 2006.

[11] Mr. Nicholson acknowledges that he and Costa's attorney, Darryl Johnston, developed the argument that since "ninety percent of the cost of the infrastructure had already been installed that we [Costa and Nicholson Engineering] should be exempt from their [Hernando County's] new access requirements and be allowed to proceed." Dkt. #41, Deposition of Nicholas Nicholson, Page 11-12.

If the developer of a planned development project with a valid master plan approved prior to the effective date of this ordinance does not initiate substantial construction as defined herein within two (2) years after the effective date of this ordinance, the master plan shall become null and void and any development pursuant thereto can be permitted only upon approval of a revised master plan under the terms of this ordinance.

Unless otherwise specified, all planned development projects shall be required to initiate substantial construction within a period of time of not more than two (2) years from the approval date. For combined planned development projects involving subdivisions, substantial construction shall mean that subdivision infrastructure has been constructed to a substantial degree, substantial investment shall be under contract, in development, or completed.

\* \* \*

Failure to initiate substantial construction as indicated shall render the master plan null and void. The intensity/density is retained under the zoning approval; however, a revised master plan meeting the existing land development regulations shall be required. The process for receiving master plan approval shall be in the same manner as a zoning amendment application.[12]

In short, Costa argued that since the Costa Property was part of the Trails at Rivard planned development, then subdivision infrastructure initiated in 2000 and 2001 by another developer in Phase 1 met the "substantial construction" exception to the two (2) year sunset provision on master plans.

The Hernando County Board agreed with this argument and determined that the 1994 and 2001 Revised Master Plans for Trails at Rivard had not expired as to the Costa Property. Accordingly, Costa was not required to comply with the two access point requirement and its application to develop Phase 2 was approved. Hernando County refused to apply the same "substantial construction" exception to Phase 3 of the Trails at Rivard development.

---

[12] Hernando County Code of Ordinances, Appendix A, Article VIII. Planned Development Project (Ordinance No. 2003-08, § 2, 4-22-03).

On November 10, 2005, Bloomingdale filed an Amended Petition for Writ of Certiorari with the Fifth Judicial Circuit of Florida seeking to quash Hernando County's resolution denying its application based on procedural due process violations. On November 6, 2006, the circuit court entered an Order Denying Writ of Certiorari. The circuit court concluded that: (1) Bloomingdale failed to meet its initial burden of proving that its proposed rezoning plan was consistent with the Comprehensive Plan; (2) Bloomingdale was afforded adequate due process - given reasonable notice and a meaningful opportunity to be heard prior to a deprivation of a property interest; (3) the essential requirements of law were followed; and (4) Board's decision was supported by competent substantial evidence.

On August 22, 2006, Bloomingdale provided a notice of claim to Hernando County pursuant to the requirements of Chapter 70, Florida Statutes (Bert J. Harris Act). Included with its notice of claim, Plaintiff provided a valid appraisal prepared and signed by an experienced state-certified real estate appraiser. On February 13, 2007, Hernando County acknowledged Plaintiff's notice and issued its statutorily mandated response to Plaintiff's notice. Hernando County stated that there would be no changes to the action of the Board.

Subsequently, on March 12, 2007, Bloomingdale filed this action in the Fifth Judicial Circuit in Hernando County, Florida. The action was removed to this Court on April 3, 2007. Plaintiff's Complaint brings seven counts against Hernando County alleging causes of action based on the following: Count I - Bert J. Harris Jr. Private Property Rights Act, Chapter 70, Florida Statutes (the "Bert J. Harris Act"); Count II - Temporary Regulatory Taking; Count III - As Applied Permanent Regulatory Taking; Count IV - Declaratory Relief; Count V -

Violations Under Article I, Section 10 of the U.S. Constitution and 42 U.S.C. § 1983; Count VI - Fourteenth Amendment/Equal Protection Violation; and Count VII - Vested Rights/Equitable Estoppel.

## Discussion.

### I.      Plaintiff's Motion for Partial Summary Judgment.

Plaintiff seeks entry of a partial summary judgment in its favor regarding limited issues of ripeness and notice under Count I.  Specifically, Plaintiff seeks judgment in its favor as to the following issues: (1) Plaintiff has complied with all pre-suit notice requirements under the Bert J. Harris Act; (2) Plaintiff's action under the Bert J. Harris Act is ripe; and (3) Plaintiff is justified in making the assumption that the land at issue may only be used for conservation purposes, and Plaintiff has no further duty to affirmatively mitigate its damages.

### A.      Bert J. Harris Act.

On May 18, 1995, Governor Chiles signed the Bert J. Harris, Jr. Private Property Rights Act into law.  Fla. Stat. Chapter 70 (1995).  The Bert J. Harris Act creates a new cause of action to provide compensation to a landowner when the actions of a governmental entity impose an "inordinate burden" on the owner's property, without rising to the level of a regulatory taking.  *See* Sections § 70.001(1), (2) and (9), Florida Statutes (2006).  The Bert J. Harris Act provides for relief, or payment of compensation, when a new law, rule, regulation, or ordinance of the state or a political entity in the state, as applied, unfairly affects real property.  *See* Fla. Stat. § 70.001(1).  When a specific action of a government entity has inordinately burdened an existing use of real property or a vested right to a specific

use of real property, the property owner of that real property is entitled to relief, which may include compensation for the actual loss to the fair market value of the real property caused by the action of government. *See* Fla. Stat. § 70.001(2).

The Bert J. Harris Act provides that an owner must send the appropriate governmental entity a notice of claim accompanied by a valid, bona fide appraisal in support of its damages no less than 180 days prior to filing an action against a governmental entity. *See* Fla. Stat. § 70.001(4)(a). Under the Act, the governmental entity must respond with a written settlement offer within 180 days.[13] *See* Fla. Stat. § 70.001(4)(c). Additionally, unless the settlement offer is accepted by the property owner, the governmental entity is required to issue a ripeness decision identifying the allowable uses to which the subject property may be put. *See* Fla. Stat. § 70.001(5)(a). "The failure of the governmental entity to issue a ripeness decision during the applicable 180 day notice period shall be deemed to ripen the prior action of the governmental entity, and shall operate as a ripeness decision that has been rejected by the property owner. The ripeness decision, as a matter of law, constitutes the last prerequisite to judicial review, and the matter shall be deemed ripe or final for the purposes of the judicial proceeding created by the section, notwithstanding the availability of other administrative remedies." *Id.*

The Act directs the circuit court to determine: "whether an existing use of the real property or a vested right to a specific use of the real property existed and, if so, whether,

---

[13] The governmental entity may make a settlement offer of "no changes to the action of the governmental entity." Fla. Stat. § 70.001(4)(c)(11).

considering the settlement offer and ripeness decision, the governmental entity or entities have inordinately burdened the real property." Fla. Stat. § 70.001(6)(a). Once the court has made a determination as to the landowner's existing use or vested right to specific use of the property and whether such use has been inordinately burdened by the law, rule, regulation, or ordinance of the governmental entity, then the court is directed to impanel a jury to determine the total amount of compensation to the property owner for the loss in value due to the inordinate burden to the real property. *See* Fla. Stat. § 70.001(6)(b). "The award of compensation shall be determined by calculating the difference in the fair market value of the real property, as it existed at the time of the governmental action at issue, as though the owner had the ability to attain the reasonable investment-backed expectation or was left with uses that are unreasonable, whichever the case may be, and the fair market value of the real property, as it existed at the time of the governmental action at issue, as inordinately burdened, considering the settlement offer together with the ripeness decision, of the governmental entity or entities." Fla. Stat. § 70.001(6)(b).

### 1. Pre-suit notice requirements and ripeness.

It is undisputed that Plaintiff has complied with all pre-suit notice requirements under the Bert J. Harris act and that Plaintiff's action is ripe. Accordingly, the Court concludes that partial summary judgment should be granted in Plaintiff's favor as to these two issues.

### 2. Mitigation of damages.

Plaintiff argues that Defendant's failure to issue a ripeness decision identifying the allowable uses to which the subject property may be put, entitles Plaintiff to assume that the

Bloomingdale Property may only be used for conservation purposes. In support of this argument, Plaintiff references a law review article published the same year as the enactment of the Bert J. Harris Act. *See* David L. Powell, Robert M. Rhodes and Dan R. Stengle, *A Measured Step to Protect Private Property Rights*, 23 Fla.St.U.L.Rev. 255, 284 (1995).[14] Plaintiff argues that when the jury considers the amount of compensation that will be awarded to the property owner, the jury should use the "last, best offer of the governmental entity" when calculating the difference in the fair market value of the property. *See id.* at 284 (the determination to be made by the court, in effect, is whether the last, best offer by the government entity, if accepted, would constitute an inordinate burden).

The authors of *A Measured Step to Protect Private Property Rights* do not suggest, however, that in the event the governmental entity fails to issue a written ripeness decision (as in this case), then the land owner may assume that its property may only be used for conservation purposes. Further, the language of the Bert J. Harris Act does not suggest such an interpretation. Rather, the Bert J. Harris Act directs the jury to consider the settlement offer with the ripeness decision, in conjunction with the fair market value of the real property, as it existed at the time of the governmental action at issue, compared with the fair market value of the real property, as inordinately burdened. *See* Fla. Stat. § 70.001(6)(a). The settlement offer is only one of several factors that the jury should consider when computing compensation to the land owner.

_____

[14] Notably, there are very few cases interpreting the Bert J. Harris Act and none addressing the issue as to mitigation of damages when the governmental entity fails to provide a formal ripeness decision.

Accordingly, the Court concludes that Plaintiff's motion to enter partial summary judgment restricting Hernando County's ability to identify allowable uses to which the subject property may be put, other than conservation purposes, should be denied.

## II.     Hernando County's Motion for Summary Judgment.

Hernando County moves for summary judgment in its favor on all counts.

### A.     Count I - Bert J. Harris Act.

Defendant argues that Plaintiff's claim under the Bert J. Harris Act must fail because Plaintiff is unable to establish a vested right to develop the property in the manner contemplated. Defendant also argues that Plaintiff is unable to establish an inordinate burden as required under the Act.

In response, Plaintiff argues that there are several material facts in dispute which preclude the entry of summary judgment as to Count I. First, Plaintiff argues that there is a question of fact as to whether Bloomingdale enjoyed an existing use of the Bloomingdale Property, or a vested right to a specific use of the Bloomingdale Property. Second, Plaintiff argues that there is a question of fact as to whether the new two access point policy inordinately burdened the Bloomingdale Property.

#### 1.     Vested right.

Section 70.001(3)(a) states: The existence of a "vested right" is to be determined by applying the principles of equitable estoppel or substantive due process under the common law or by applying the statutory law of this state. Section 70.001(3)(a), Florida Statutes (2006).

### a. Equitable estoppel.

The doctrine of equitable estoppel will preclude a municipality from exercising its zoning power where a property owner (1) in good faith (2) relying upon some act or omission of the government (3) has made such a substantial change in position or has incurred such extensive obligations and expenses that it would be highly inequitable and unjust to destroy the right he acquired. *See Hollywood Beach Hotel Co. v. City of Hollywood*, 329 So. 2d 10, 15 (Fla. 1976), *see also Salkolsky v. City of Coral Gables*, 151 So. 2d 433 (Fla. 1963). "The mere purchase of land does not create a right to rely on existing zoning." *Town of Largo v. Imperial Homes Corp.*, 309 So. 2d 571, 573 (Fla. 2d DCA 1975). "All that one who plans to use his property in accordance with existing zoning regulations is entitled to assume is that such regulations will not be altered to his detriment, unless the change bears a substantial relation to the health, morals, welfare or safety of the public." *City of Miami Beach v. 8701 Collins Ave., Inc.*, 77 So. 2d 428, 430 (Fla. 1955). "It is well settled that a zoning ordinance to be valid must bear a substantial relation to the public health, safety, morals or general welfare." *Id.*

There is no requirement, however, that the landowner must have either obtained building permits or made any physical changes to the land in reliance on existing zoning in order for the doctrine of equitable estoppel to apply. *Town of Largo*, 309 So. 2d 571, 573. "Stripped of the legal jargon which lawyers and judges have obfuscated it with, the theory of estoppel amounts to nothing more than an application of the rules of fair play. One party will not be permitted to invite another onto a welcome mat and then be permitted to snatch

the mat away to the detriment of the party induced or permitted to stand thereon.  A citizen is entitled to rely on the assurances and commitments of a zoning authority and if he does, the zoning authority is bound by its representations, whether they be in the form of words or deeds." *Id.*; *see also Pasco County v. Tampa Development Corporation*, 364 So. 2d 850, 852-853 (Fla. 2d DCA 1978).

In this case, Plaintiff offers the deposition of Dan Pitts in support of its assertion that Bloomingdale relied in good faith on representations provided by Hernando County planning and zoning board before purchasing the Bloomingdale Property.  According to Pitts, Bloomingdale's research with the County established that there was a master plan in place and that the zoning densities would allow in excess of 500 homes on the 125 acre tract.[15] After speaking with the County staff, Mr. Pitts was led to believe that the 2001 Revised Master Plan had not expired.  Mr. Pitts deposition reads, in pertinent part:

> Q: At the time the Plaintiff purchased the property we're here about today, did the Plaintiff have the understanding as to whether or not the master plans expire in Hernando County?
> A: My understanding it had not expired.
> Q: What is that understanding based on?
> A: Conversations with County staff.
> Q: Who at the County did you speak to regarding whether or not the master plan was expired on this property?
> A: I don't recall all the names, but I had many conversations with many staff members with the County prior to the purchase of the property. And verified that the master plan was in place.  I believe Middler (ph) for a name was one of the planners.[16]
>                                      * * *

---

[15] Dkt. #39, Deposition of Dan Pitts, Page 48.

[16] *Id.*, Page 72.

Q:      Let me ask the question more clearly since you're being deposed as the corporate representative. By the time Plaintiff purchased this property, did the Plaintiff make any effort to understand the - how the property was zoned or whether or not there was a master plan in effect.

A:      Yes.

Q:      How so?

                                    * * *

A:      I was thinking we've already answered that, but, yes, we had done all the preliminary work ahead of time, verified with the County, with the planners, everyone that we could get information with from the County said, yes, there was a master plan, yes, it was in force, yes, we understood the zoning, yes, we understood the density. All of those questions were answered prior to purchase.[17]

                                    * * *

Q:      The two-access policy we discussed earlier, does that place any burden on the Plaintiff's property that isn't placed on every other similarly situated property in the County?

A:      Yes.

Q:      How so?

A:      Being that the facts of public record showed that this was a master planned community that has multiple phases that the County has recognized and the original approval of this master plan has always had one access point and the ruling for two access points did not come into play until after Bloomingdale's application was filed. And as a result, this tract would be definitely impacted different than a new site that was not master planned that would have knowledge of the current rules or that the current rules would have already been in place at time of purchase. The uniqueness of this site and that ruling, the new ruling, makes it virtually impossible to have two access points.[18]

Defendant does not refute that Mr. Pitts spoke with County employees about the viability of the 2001 Revised Master Plan; rather, during oral argument, Defendant's counsel argued that the County employees that Mr. Pitts spoke to were not shown to be "executive" employees, and therefore, Plaintiff could not rely in good faith on such employees

---

[17] *Id.*, Page 82.

[18] *Id.*, Page 125.

representations. Additionally, Defendant argues that Plaintiff should have known that master plans expire after two years, and therefore, Plaintiff could not rely in good faith on the 2001 Revised Master Plan.

### b.    Substantive due process.

The Florida Constitution provides that "no person shall be deprived of . . .property . . .without due process of law . . ." Fla. Const., Art. I, § 9. Florida's due process clause encompasses substantive and procedural components. *M.W. v. Davis*, 756 So. 2d 90, 97 (Fla. 2000). The test to determine whether the substantive component is implicated is whether state action "bears a rational relation to a legitimate legislative purpose in safeguarding the public health, safety or general welfare and is not discriminatory, arbitrary, or oppressive." *Chicago Title Insurance Company v. Butler*, 770 So. 2d 1210, 1214-15 (Fla. 2000). The substantive component of the due process clause examines state exercise of police power and will be upheld provided that the government does not act arbitrarily. *Tampa-Hillsborough County Expressway Authority v. A.J.W.S. Corporation*, 640 So. 2d 54, 57 (Fla. 1994).

Plaintiff also argues that Defendant applied the two point access policy in an arbitrary manner, by approving Costa's application to develop Phase 2. Plaintiff points out that Phase 2 only has one access point and is located in a flood plain - the same defects relied upon by Hernando County when denying Bloomingdale's application. Additionally, Plaintiff points out that the Hernando County Board acknowledged that they were treating Costa in a preferential manner at Costa's appeal hearing by stating that Costa's approval would not

establish a precedence for the development of Phase 3.[19]  Both the Costa and Bloomingdale

Properties were clearly part of the same master plans, and neither property had any physical

construction at that point in time.  Despite the fact that the Bloomingdale and Costa

Properties were adjoining parcels, located in the same subdivision, possessed the same flood

plain issues, included in the same master plans, intended to use the same road for access, and

arguably intended to use the same infrastructure located in Phase 1,[20] Hernando County

approved Costa's application but denied Bloomingdale's. Defendant's argument that

Bloomingdale's application was denied in order "to protect the public health, safety and

welfare by taking reasonable steps to ensure residential structures are not built in a location

prone to flooding" must be questioned considering most of the flooding problems had

occurred on or around Costa's property.[21]

---

[19] *See* Dkt. # 39, Deposition of Dan Pitts, Pages 115-116.

[20] *See* Dkt. #41, Deposition of Nicholas Nicholson, Page12-13, reading:

Q:  That plan [2001 Revised Master Plan] shows two stubouts onto what would be the
    Bloomingdale property.  Do you see that?
A:  Yes.
Q:  And then on the Exhibit 17 [ Costa Homes Master Plan Revision] which I believe has a later
    date, one of those is not there anymore, the one at Clearview.  Do you see that?
A:  Yes.
Q:  Do you know what happened or why the Clearview stubout was eliminated?
A:  No, I don't.

* * *

*See* Dkt. #41, Deposition of Nicholas Nicholson, Page17, reading:

Q:  Did you have any discussions with anybody at any time from Costa Homes regarding access
    to and from the Bloomingdale property through the Costa Homes property?
A:  The only access [sic] I had with George and Paul as I can remember is they didn't really
    want a stubout to the other project personally.

[21] "County staff was particularly concerned about flooding in the area of the Plaintiff's
                                                                              (continued...)

### c. Application of Subdivision Access Policy.

"In determining whether an ordinance may be applied retroactively, the Court must determine: (1) whether there is clear evidence of legislative intent to apply the law retroactively; and (2) whether retroactive application is constitutionally permissible, in that the new law does not create new obligations, impose new penalties, or impair vested rights." *Jasinski v. The City of Miami*, 269 F.Supp.2d 1341, 1346 (S.D. Fla. 2003), citing *Metropolitan Dade County v. Chase Federal Housing Corp.*, 737 So.2d 494, 499 (Fla. 1999).

The "two access point" policy in question, states, in pertinent part: "A minimum of two access points must be provided to serve any **new** subdivision or development pod" (emphasis added). There is clear evidence of legislative intent to not apply the Subdivision Access Policy retroactively. Rather, the policy was intended to apply only to new subdivision or development pods. The parties do not dispute this issue.

### 2. Existing use.

Section 70.001(3)(b) states:

The term "existing use" means an actual, present use or activity on the real property, including periods of inactivity which are normally associated with, or are incidental to, the nature or type of use or activity or such reasonably forseeable, nonspeculative land uses which are suitable for the subject real property and compatible with adjacent land uses and which have created an

---

[21](...continued)

contemplated development because the property immediately to the west of the Plaintiff's parcel flooded extensively on multiple occasions in the years immediately prior to the Plaintiff's application for a revised master plan. Based on the County's awareness of the flooding problems in the immediate vicinity of Plaintiff's property, the County staff sought to protect public, health, safety and welfare by taking reasonable and prudent steps to address flood zone issues." Dkt. #29, Affidavit of Jerry Greif, Hernando County Chief Planner.

existing fair market value in the property greater than the fair market value of the actual, present use or activity on the real property.[22]

Defendant does not comment on whether Plaintiff maintained an "existing use" on the Bloomingdale Property. Plaintiff asserts, however, that it maintained a reasonably forseeable, nonspeculative land use which was suitable for the subject real property and compatible with adjacent land uses. Bloomingdale also asserts that, as part of the Trails of Rivard Master Plan, Bloomingdale was endowed with certain land use rights including zoning, the right to use the common and only access point for the overall subdivision, and to have certain densities. Bloomingdale argues that such uses were consistent with the scheme of the master plan, and therefore, reasonably forseeable and nonspeculative. Finally, Bloomingdale claims that being part of the master plan that endowed these land use rights to the owner increased the existing fair market value of the Bloomingdale Property.

The Court concludes that there is a material issue of fact in dispute as to whether or not the 2001 Revised Master Plan expired as to the Bloomingdale Property prior to the submission of its application to Hernando County on May 16, 2005. The determination of whether the 2001 Revised Master Plan expired as to Bloomingdale is axiomatic to the resolution of whether Bloomingdale enjoyed an "existing use of the real property" or a "vested right to a specific use of the real property."[23]

---

[22] Section 70.001(3)(b), Florida Statutes (2006).

[23] If the 2001 Revised Master Plan did not expire as to Bloomingdale, then the two point access policy can not be applied to the Bloomingdale Property. If the 2001 Revised Master Plan did expire as to Bloomingdale, then Bloomingdale's enjoyment of an "existing use of the real property"
(continued...)

### 3. Inordinate burden.

Section 70.001(3)(e) states, in pertinent part:

> The terms "inordinate burden" or "inordinately burdened" mean that an action of one or more governmental entities has directly restricted or limited the use of real property such that the property owner is permanently unable to attain the reasonable, investment-backed expectation for the existing use of the real property, or that the property owner is left with existing or vested uses that are unreasonable such that the property owner bears permanently a disproportionate share of a burden imposed for the good of the public, which in fairness should be borne by the public at large.[24]

Plaintiff argues that Hernando County's action of applying the new two access point policy as to the Bloomingdale Property has directly restricted or limited the use of its property such that its is permanently unable to attain the reasonable, investment-backed expectation for the existing use of the real property, i.e. developing a subdivision with a maximum density of 5.4 units per acre.

Before determining whether the adoption of the new two access point policy on May 24, 2005, inordinately burdened the Bloomingdale Property, however, the trial court must first make a determination as to whether or not the 2001 Revised Master Plan expired as to the Bloomingdale Property prior to filing its May 16, 2005 application. Accordingly, Defendants motion for summary judgment is denied as to Count I.

---

[23](...continued)
or "vested right to a specific use of the real property" must be examined by the trial court.

[24] Section 70.001(3)(e), Florida Statutes (2006).

**B.	Counts II and III - Temporary Regulatory Taking and As Applied Permanent Regulatory Taking.**

Defendant argues that Plaintiff is unable to establish any reasonable backed expectation in developing the property at issue in this litigation, since Hernando County at no time made a finding that Plaintiff is completely unable to develop the subject property, nor has Hernando County taken the position that the density of development on Plaintiff's property must be substantially reduced. Defendant also argues that Plaintiff's taking claims are not ripe for adjudication since Hernando County did not reach a final decision regarding the application of the regulations to the property at issue.

Whether or not a temporary taking or as-applied taking has occurred is extremely fact intensive and should not be decided upon a motion for summary judgment when material facts are in dispute. *Penn Central Transportation Company v. City of New York*, 438 U.S. 104, 124 (1978). Three factors to be considered to identify a regulatory taking are: (1) the economic impact on the plaintiff of the challenged rule, regulation or statute; (2) the extent to which the regulation interferes with investment-backed expectations; and (3) the nature of the challenged action. *Connolly v. Pension Benefit Guaranty Corp.*, 475 U.S. 211 (1986).

As discussed above, there is a material issue of fact in dispute as to whether or not the 2001 Revised Master Plan expired as to the Bloomingdale Property prior to the submission of its application to Hernando County on May 16, 2005. Such determination will have to be made, prior to examining the extent to which the two point access policy interferes with Bloomingdale's investment backed expectations.

The Court disagrees with Hernando County's ripeness argument. Hernando County issued a final decision regarding the application of the regulations to the Bloomingdale Property by virtue of adopting Resolution No. 2005-280, which denied Bloomingdale's proposed master plan revision based on Bloomingdale's failure to provide two (2) functioning access points with access to a public collector roadway.[25] It would have been impossible to provide two functioning access points as required under the new Subdivision Access Policy based on the location of the Bloomingdale Property; therefore, it would have been futile for Bloomingdale to submit other subdivision development plans with only one functioning access point. Accordingly, Defendant's motion for summary judgment as to Counts II and III are denied.

## C.     Count IV - Declaratory Relief.

Defendant argues that Plaintiff fails to identify an actual controversy to be resolved by this Court due to the exclusive remedies provisions of Florida's Local Government Comprehensive Planning and Land Development Regulation Act, Fla. Stat. § 163.3161 (the "Comprehensive Planning Act"). Zoning decisions are construed as "development orders" under the Comprehensive Planning Act. Fla. Stat. § 163.3164(7) and (8). Persons who are aggrieved by such development orders may seek declaratory or injunctive relief against municipalities, but must do so no later than thirty (30) days after the rendition of the development order. Fla. Stat. §§ 163.3215(2) and (3).

---

[25] Dkt. #29-4.

In response, Plaintiff argues that Defendant failed to raise such affirmative defense as to the statute of limitations in its response to the Compliant, thus such argument is waived. Fed.R.Civ.P. 8(c) provides, in pertinent part: "In pleading to a preceding pleading, a party shall set forth affirmatively . . .statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense." *See also Kennan v. Dow Chemical Co.*, 717 F.Supp. 799, 807 (M.D. Fla. 1989); *Cason v. Florida Dept. Of Management Services*, 944 So.2d 306, 315 (Fla. 2006)(Failure to plead that the statute of limitations has expired constitutes waiver.); and Fla.R.Civ.P. 1.110(d).

Upon a review of Defendant's Answer and Affirmative Defenses to Plaintiff's Complaint (Dkt. #3), it appears that Defendant failed to raise the affirmative defense of a thirty (30) day statute of limitations under Fla. Stat. § 163.3215(3). Thus, Defendant has waived the same.

Pursuant to 28 U.S.C. § 2201(a), a district court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. The Declaratory Judgment Act "confer[s] on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995). However, "[i]t only gives the federal courts competence to make a declaration of rights; it does not impose a duty to do so." *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1330 (11th Cir. 2005). While district courts may not decline to hear actions for declaratory relief "on the basis of whim or personal

disinclination," the standard is clearly generous. *Angora v. Condo. Ass'n of Lakeside Village, Inc.*, 796 F.2d 384, 387 (11th Cir. 1986).

In determining whether an actual controversy exists under § 2201, the Court must consider "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant" the issuance of a declaratory judgment. *MedImmune v. Genentech*, *Inc.* 549 U.S. 118 (2007), citing *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941). Upon a review of the record, the Court concludes that an actual controversy does exist between the parties of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. Accordingly, Defendant's motion for summary judgment as to Count IV is denied.

**D.     Count V - Violations Under Section 10 and 42 U.S.C. § 1983.**

**1.     Contracts Clause.**

Defendant argues that passing the two point access policy was an executive act, and therefore, there was no contractual relationship to impair under the Contracts Clause found in Section 10. Plaintiff agrees with Defendant's argument to the extent such claim was inferred. Bloomingdale concedes that no such cause of action exists. Accordingly, Defendants motion for judgment is granted to the extent Count V seeks a claim under the Contracts Clause.

## 2.    Substantive due process.

In Count V, Plaintiff asserts an as-applied arbitrary and capricious substantive due process claim.  In order to prove an as applied arbitrary and capricious due process violation, Bloomingdale must demonstrate two things at trial.  First, the claim must be shown to involve a constitutionally protected or fundamental interest; second, the claim must be shown to represent an abuse of government power sufficient to raise an ordinary tort to the stature of a constitutional violation.  *Executive 100, Inc. v. Martin County*, 922 F.2d 1536, 1541 (11th Cir. 1991).  An individual's ability to own land and put it to lawful use is a fundamental American freedom.  *See Moore v. City of Tallahassee*, 928 F.Supp. 1140, 1146 (N.D. Fla. 1995); *see also Washington ex rel Seattle Title Trust Company v. Roberge*, 278 U.S. 116, 121 (1928).

Defendant argues that Plaintiff's substantive due process challenge must be reviewed under the highly differential rational basis standard.  *Schwartz v. Kogan*, 132 F.3d 1387, 1390 (11th Cir. 1998).  A commercial regulation, such as the two-access point policy challenged by Plaintiff only violates substantive due process if Plaintiff can prove (1) it was deprived of a constitutionally protected property interest and (2) the deprivation was caused by a regulation that was pretextual, arbitrary and capricious and without any rational basis.  *See Reserve Limited v. Town of Longboat Key*, 17 F.3d 1374, 1379 (11th Cir. 1994).  Once again, Defendant argues that the two access policy was born of sincere and legitimate concerns for public health, safety and welfare.

Considering the record in the light most favorable to Bloomingdale and drawing all justifiable inferences in Bloomingdale's favor, the Court concludes that there is a question of material fact as to the manner in which Hernando County applied the two point access policy as to Bloomingdale, but not as to Costa. Specifically, the County recognized the Costa Property as part of the 1994 and 2001 Revised Master Plans because of substantial construction on infrastructure in Phase 1, but refused to apply the same reasoning for the Bloomingdale Property. Accordingly, the Court concludes that a genuine issue of material fact exists for a reasonable jury to return a verdict in Plaintiff's favor as to whether Hernando County's application of the two point access policy as to the Bloomingdale Property represents an abuse of government power sufficient to establish a substantive due process violation. Accordingly, Defendant's motion for summary judgment as to Count V is denied.

**E.      Count VI - Equal Protection.**

Plaintiff asserts an equal protection claim in Count VI alleging that Defendant violated Plaintiff's rights to equal protection under the Fourteenth Amendment. If a landowner is treated differently from other similarly situated landowners, without any rational basis, a cause of action will be stated. *Executive 100, Inc. v. Martin County*, 922 F.2d 1536 (11th Cir. 1991). Similarly situated persons must be treated the same. This issue is extremely factual since it requires the plaintiff to prove intentional discrimination. *E & T Realty v. Strickland*, 830 F.2d 1107 (11th Cir. 1987).

In order to prevail on the merits of its equal protection claim, Plaintiff must prove that it was treated differently from similarly situated persons and that the difference in treatment

was rendered in order to intentionally discriminate against it. *GJR Investment, Inc. v. County of Escambia*, 132 F.3d 1359, 1367 (11th Cir. 1998). In applying these standards, it should be acknowledged that even arbitrary administration of executive acts do not violate the Equal Protection clause unless the acts were engaged in for purposeful discrimination. *E & T Realty*, 830 F.2d at 1114. In the context of a challenge to a legislative act and in the absence of a fundamental right or suspect class, the act will be constitutional provided that it bears a rational relationship to a legitimate state purpose. *Minnesota State Board for Community Colleges v. Knight*, 465 U.S. 271, 291 (1984).

Defendant argues that Plaintiff is unable to identify any similarly situated parties which were treated differently from the Plaintiff. Bloomingdale disputes Defendant's contention that Bloomingdale cannot identify any similar situated parties. Bloomingdale asserts in the Complaint that Bloomingdale and Costa are similarly situated parties and that they were treated differently because Costa was part of the same Master Plan as Bloomingdale, had no construction on its land, and yet, the County found the Master Plan was applicable to Costa but expired as to Bloomingdale.

The record before this Court establishes that Bloomingdale and Costa Properties are adjoining parcels, located in the same subdivision, possessed the same flood plain issues, included in the same master plans, intended to use the same road for access, and arguably intended to use the same infrastructure located in Phase 1. Bloomingdale filed its application for a revision of the master plan six months prior to Costa and a few weeks prior to the adoption of the Subdivision Access Policy.

Considering the record in the light most favorable to Bloomingdale and drawing all justifiable inferences in Bloomingdale's favor, the Court concludes that there is a question of material fact as to whether Bloomingdale and Costa are similarly situated parties that were treated differently by Hernando County. Additionally, there appears to be a question of fact as to whether Hernando County's action of denying Bloomingdale's application was rendered in order to intentionally discriminate against it.[26] Accordingly, Defendant's motion for summary judgment as to Count VI is denied.

### F.      Count VII - Vested rights and equitable estoppel.

In Count VII, Plaintiff asserts a common law violation by Hernando County of Bloomingdale's vested tights under the master plan to develop the Bloomingdale Property. As discussed in detail above, vested rights and equitable estoppel are elements of Plaintiff's Bert J. Harris Act claim. Again, the trial Court must determine whether or not the 2001 Revised Master Plan expired as to the Bloomingdale Property prior to the submission of its

---

[26] *See* Dkt. #40, Deposition of Mark Gutman, Page 38, reading:

Q:      When do you see – under what circumstances do you see the issue of flood mitigation being addressed at the rezoning or master plan level?
A:      When they don't want something approved.
Q:      When you say "they," who's that?
A:      The county. I don't know. The planning staff.
Q:      Have you ever had a subdivision development be denied at the rezoning or master plan level because of flood zoning issues?
A:      No.
Q:      So every time the county –
A:      Planning staff would recommend denial for the project. It would be stated in there that lots cannot be within the floodplain. Need to move all paved areas out of the existing floodplains which is virtually impossible with these new maps. Every single parcel that we've ever dealt with has these floodplains on it now, so there's always going to be lots and roads in the floodplain, in the existing floodplain. So the staff would recommend against approval, and then we would always get it overturned by planning and zoning.

application to Hernando County before making a determination as to whether Bloomingdale maintained a vested right under the master plan to develop the Bloomingdale Property or whether the County is equitably estopped from applying the two point access rule as a result of the vacation of public right-of-ways without notifying Bloomingdale's predecessor. Accordingly, Defendant's motion for summary judgment as to Count VII is denied.

It is therefore **ORDERED AND ADJUDGED** that:

1.     Defendant Hernando County's Motion for Summary Judgment (Dkt. #26) is **GRANTED IN PART AND DENIED IN PART** as stated herein.

2.     Plaintiff's Motion for Partial Summary Judgment (Dkt. #25) is **GRANTED IN PART AND DENIED IN PART** as stated herein.

3.     Because of limited judicial resources available to try civil cases and given the nature of this proceeding which suggests that a bench trial and a jury trial may be necessary, Plaintiff and Defendant are directed to mediate this matter again in an attempt to achieve an equitable settlement of the issues.  Lead Counsel shall immediately select a Mediator, and file with the Clerk of Court, **on or before March 6, 2009**, a Notice of Mediator Selection and Scheduling of Mediation which:

(a)     identifies the selected Mediator and includes complete address, telephone and facsimile information, and

(b)     sets forth the time and place of the scheduling for the mediation conference.  If the parties are unable to agree on the selection of a

mediator, Lead Counsel is directed to immediately advise the Court of

the same and the Court will issue an order appointing a mediator.

4.      The mediation conference shall be conducted any time on or before April 30,

2009.

**DONE** and **ORDERED** in Tampa, Florida on February 11, 2009.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

<u>**Copies furnished to:**</u>
Counsel/Parties of Record

S:\Odd\2007\07-cv-575.cross msjs 25 and 26.wpd